# Third District Court of Appeal

## State of Florida

Opinion filed April 18, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D16-854; 3D16-1831; 3D16-1456; 3D16-1457; 3D16-1459
Lower Tribunal Nos. 14-32096; 16-3469; 15-30091; 16-6056; 15-15114

_____


**Citizens Property Insurance Corporation,**
Appellant/Cross-Appellee,

vs.

**Rosa Calonge,**
Appellee/Cross-Appellant,
**and**
**Wilson Imbert and Judy Imbert, Lazaro Gomez Cruz and Judith Carreras Lopez, Francisco Granados and Daisy Granados, and Anthony Calvi,**
Appellees.


Appeals from non-final orders from the Circuit Court for Miami-Dade County, Antonio Arzola, Migna Sanchez-Llorens, and Monica Gordo, Judges.

Link & Rockenbach, P.A., and Kara Berard Rockenbach (West Palm Beach), for appellant/cross-appellee.

Barnard Law Offices, L.P., and Andrew C. Barnard, for appellees/cross-appellant.

Before ROTHENBERG, C.J., and SUAREZ and SCALES, JJ.

SCALES, J.

In these five consolidated appeals, we review virtually identical non-final orders that deny, without elaboration, Appellant Citizens Property Insurance Corporation's ("Citizens") motions to dismiss Appellees'[1] claims. While Citizens's dismissal motions assert its sovereign immunity from Appellees' claims, we do not have jurisdiction to review the trial courts' unelaborated non-final orders denying Citizens's dismissal motions. Therefore, we dismiss each of Citizens's appeals.

**I. Relevant Background**

Citizens sought to dismiss various counts in Appellees' complaints. Citizens argued that these counts, irrespective of how they were couched, constitute disguised, first-party bad faith claims for which Citizens enjoys sovereign immunity under section 627.351(6)(s) of the Florida Statutes and the case of Citizens Property Insurance Corp. v. Perdido Sun Condominium Association, 164 So. 3d 663 (Fla. 2015). The trial courts adjudicated each such dismissal motion by entering an unelaborated order that simply denied Citizens's motion. Citizens appealed each of these non-final orders.

---

[1] Each of the five appellees, whom we refer to collectively as "Appellees," filed a claim with Citizens seeking insurance proceeds for residential property damage. After disputes arose regarding Appellees' insurance claims, each appellee filed a complaint in circuit court. While each complaint contains somewhat different allegations and counts, because of our ruling, the variations in Appellees' allegations are not relevant to our holding. All five complaints yielded trial court orders that involve the same legal question for our consideration, and therefore, this opinion affects each appellee's case in the same way.

In its initial briefs to this Court, Citizens argues that the trial court erred by denying its dismissal motions; and, because Citizens's dismissal motions were premised upon sovereign immunity claims, the non-final dismissal orders are subject to interlocutory review. See Fla. R. App. P. 9.130(a)(3)(C)(xi). In their answer briefs to this Court, Appellees each assert, among other things, that, because the appealed interlocutory orders are unelaborated, the orders lack the requisite determination to allow appellate review under rule 9.130(a)(3)(C)(xi). We consolidated these appeals because the threshold jurisdictional issue for each appeal is the same: whether we have jurisdiction to review an unelaborated non-final order denying Citizens's motion to dismiss when the motion asserts entitlement to sovereign immunity.

**II. Analysis**

Our appellate jurisdiction to review non-final orders is limited to only those orders specifically scheduled in rule 9.130(a)(3). See Keck v. Eminisor, 104 So. 3d 359, 363-64 (Fla. 2012). Citizens relies on rule 9.130(a)(3)(C)(xi) to vest this Court with jurisdiction to hear the otherwise non-reviewable interlocutory orders. This rule reads as follows: "Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . that, as a matter of law, a party is not entitled to sovereign immunity."

3

In each order on appeal, the trial court states merely that Citizens's motion to dismiss was denied. In none of these orders did the trial court state as a basis for its denial that Citizens was not entitled to the sovereign immunity shield from suit. While the dissent assiduously argues to the contrary, we are constrained by this Court's jurisprudence and the text of the relevant rule to limit our jurisdictional inquiry to the four corners of the appealed order. Put another way, in making our jurisdictional determination, we look only to the face of the trial court's order and do not penetrate the record with a searchlight to divine whether the trial court's undisclosed rationale warrants appellate review. Miami-Dade Cty. v. Pozos, 42 Fla. L. Weekly D418 (Fla. 3d DCA Feb. 15, 2017); Citizens Prop. Ins. Corp. v. Sosa, 215 So. 3d 90 (Fla. 3d DCA 2016).

A. This Court's Jurisprudence

In Pozos, the plaintiff claimed that the County was liable for personal injuries suffered after plaintiff was shot at a County park. The County filed a summary judgment motion asserting sovereign immunity, and the trial court entered an unelaborated order denying the County's motion. The County appealed this non-final order, arguing that this Court had jurisdiction to review the trial court's unelaborated order because the order impliedly determined, as a matter of law, that the County was not sovereignly immune from Pozos's claim. This Court dismissed the County's appeal for lack of jurisdiction because the trial court's

4

order did not provide an explicit determination on the availability of the immunity defense, and because Florida's district courts are "without authority to make the determination on our own accord." Pozos, 42 Fla. L. Weekly D418.

In Sosa, which bears some similarity to the instant case, Citizens appealed a non-final order in which the trial court denied Citizens' motion to strike certain bad faith allegations and to dismiss and/or strike certain counts of the complaint. On appeal, Citizens "characterize[ed] the trial court's order as one determining that it is not entitled to sovereign immunity as a matter of law . . . ." Sosa, 215 So. 3d at 91. This Court dismissed the appeal for lack of jurisdiction, again because the trial court's order did not address sovereign immunity specifically. Id.

Both Pozos and Sosa follow Florida Supreme Court jurisprudence dictating that Florida's district courts do not have jurisdiction to review a non-final order addressing immunity unless the order specifically states that the immunity defense is not available. Hastings v. Demming, 694 So. 2d 718, 720 (Fla. 1997). While Hastings and its progeny[2] involve workers' compensation immunity rather than sovereign immunity, the jurisdictional rules authorizing the interlocutory appeals of orders relating to workers compensation immunity and sovereign immunity are identical in their wording, and therefore are analogous.[3] Because the drafters of

_____

[2] See Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812 (Fla. 2004); Fla. Dept. of Corrections v. Culver, 716 So. 2d 768 (Fla. 1998).

[3] Rule 9.130, as it relates to workers' compensation immunity, reads as follows:

5

these two rules chose to employ virtually identical language to define the contours of our interlocutory jurisdiction in the immunity context, we have no difficulty applying case law from workers' compensation immunity jurisprudence to inform our analysis of sovereign immunity jurisdiction. See State v. Hearns, 961 So. 2d 211, 217 (Fla. 2007) ("We have held that where the Legislature uses the exact same words or phrases in two different statutes, we may assume it intended the same meaning to apply.")

We do note that Hastings, Reeves and Culver arose from summary judgment determinations, yet the Florida Supreme Court has not distinguished between an order on a motion for summary judgment and an order on a motion to dismiss. Indeed, Reeves cites approvingly to Martin Electronics, Inc., v. Glombowski, 705 So. 2d 26, 30 (Fla. 1st DCA 1997), in which the First District held that an unelaborated order deriving from a motion to dismiss and making no specific immunity determination, was not an appealable order. Reeves, 889 So. 2d at 821.

B. Text of the Relevant Rule

Our reading of rule 9.130(a)(3)(C)(xi) – preventing interlocutory review of an unelaborated order – is  consistent with the text of the rule, as well as the requirement that we are to construe narrowly the categories of non-final orders

"Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . that, as a matter of law, a party is not entitled to workers' compensation immunity." Fla. R. App. P. 9.130(a)(3)(C)(v).

6

subject to interlocutory appeal. <u>Walker v. Fla. Gas Transmission Co.</u>, 134 So. 3d 571, 572 (Fla. 1st DCA 2014). The presence of the word "determine" in the rule is significant. The "non-final order[]" must "determine" that "a party is not entitled to sovereign immunity." Thus, the plain text of the rule requires that, for interlocutory review to be available, the order itself must *actually adjudicate* the sovereign immunity issue against the allegedly immune party. Nothing in the rule suggests that we may adduce or surmise such a determination by reviewing documents in the record apart from the trial court's written order. Such a search for jurisdiction within the record would lead to imprecise and even presumptuous conclusions. To allow a district court to make its jurisdictional determination by engaging in its own examination of the underlying record essentially would allow the district court to make the sovereign immunity determination in the first instance. Surely, such a search for jurisdiction would undermine the purpose of rule 9.130(a)(3) itself, which is to expressly circumscribe the categories of non-final orders subject to interlocutory review. <u>Pozos</u>, 42 Fla. Weekly D418.

**III. Conclusion**

The trial courts' non-final orders below merely said: "Denied." These orders did not determine, as a matter of law, that Citizens is not entitled to sovereign immunity. Therefore, we lack jurisdiction to review the challenged orders under rule 9.130(a)(3)(C)(xi), and dismiss the consolidated appeals.[4]

7

Dismissed.

SUAREZ, J., concurs.

ROTHENBERG, C.J. (dissenting).

---

[4] We are not unsympathetic to Citizens's argument. After all, immunity from suit is significantly different from having a mere defense to an action; an immune party should not be forced to stand trial or otherwise face the burdens of litigation. See Tucker v. Resha, 648 So. 2d 1187, 1189-90 (Fla. 1994). The idea that a defendant cannot be "re-immunized" after an erroneous denial of immunity underpins the appellate rules allowing for interlocutory review of an order determining that a party is not entitled to immunity. Id. at 1189. It is for this reason, when a party asserts entitlement to immunity, we strongly encourage trial courts to elaborate on their non-final orders denying such immunity to allow the alleged immune party interlocutory review of such orders.

In these five consolidated appeals,[5] we are presented with two questions: (1) whether we have appellate jurisdiction to review non-final orders that deny, without elaboration, motions to dismiss that only raise the issue of sovereign immunity from suit; and (2) if we reach the merits, whether the trial court erred by denying Citizens Property Insurance Corporation's ("Citizens") motion to dismiss the breach of contract and declaratory judgment claims pled in the five separate complaints filed by the Appellees, claims from which Citizens argues it is sovereignly immune because they are statutory bad-faith claims. As will be explained more fully below, I would answer both questions in the affirmative, reverse the orders on appeal, and remand with instructions to the trial courts to enter orders granting Citizens' motions to dismiss without prejudice to allow the Appellees to file amended complaints.

## BACKGROUND

After the Appellees allegedly sustained accidental property damage to their real properties, they sued their insurer, Citizens, alleging various causes of action. Although the procedural history and the complaints in each of these five cases are somewhat different, the common issue in these appeals is whether the trial court

---

[5] I refer to the Appellees in these five appeals collectively as "the Appellees" because (1) they are represented by the same legal counsel, (2) the allegations in the relevant counts in their complaints implicate the same legal questions, and (3) the end result of this opinion affects them all in the same way.

erred by denying Citizens' motion to dismiss the breach of contract and declaratory judgment counts brought in each of the Appellees' complaints.

In each case, Citizens moved to dismiss the breach of contract and declaratory judgment claims, arguing that these claims were actually disguised claims for statutory bad-faith under section 624.155(1), Florida Statutes (2014), for which Citizens is entitled to sovereign immunity as a matter of law. See Citizens Prop. Ins. Corp. v. Perdido Sun Condo. Ass'n, 164 So. 3d 663, 667 (Fla. 2015) (holding that Citizens has sovereign immunity from suit regarding statutory bad-faith claims). Although the trial court judges in these five cases entered orders denying Citizens' motions to dismiss the breach of contract and declaratory judgment claims, they failed to elaborate as to their reasoning either at the hearings on Citizens' motions or in the orders they issued.[6] Citizens timely appeals these non-final orders denying its motions to dismiss pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(xi), which provides that a party may appeal to the district court non-final orders that "determine . . . that, as a matter of law, a party is not entitled to sovereign immunity."

I. **Jurisdiction**

---

[6] While in some of the cases, Citizens also moved to dismiss other counts in the Appellees complaints for different reasons, the trial court's rulings on those counts are not before us.

10

The majority dismisses Citizens' appeals for lack of jurisdiction based on its conclusion that the orders are not appealable under rule 9.130(a)(3(C)(xi) because the trial court's orders do not *expressly* state that as a matter of law, Citizens is not entitled to sovereign immunity. I respectfully submit that the majority's interpretation of rule 9.130(a)(3)(C)(xi) is unsupported by the plain language of the rule, the purpose of the rule, the relevant case law, and common sense. I would therefore deny each of the Appellees' motions to dismiss the appeals and decide these appeals on the merits.

Our standard of review for the interpretation of procedural rules is de novo. Strax Rejuvenation & Aesthetics Inst., Inc. v. Shield, 49 So. 3d 741, 742 (Fla. 2010). "Procedural rules should be given a construction calculated to further justice, not to frustrate it." Id. at 743 (quoting Singletary v. State, 322 So. 2d 551, 555 (Fla. 1975)). "Our courts have long recognized that the rules of construction applicable to statutes also apply to the construction of rules." Brown v. State, 715 So. 2d 241, 243 (Fla. 1998).

**A. The majority's interpretation is unsupported by the text of the rule**

As the majority correctly states, we are constrained by the text of the rule. Rule 9.130(a)(3)(C)(xi) provides as follows: "Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . that, as a matter of law, a party is not entitled to sovereign immunity." This text does not

11

contain any words limiting the appeal of non-final orders to those orders that *expressly* determine that a party is not entitled to sovereign immunity. The word "determination," from which the word "determine" derives, simply means "[t]he act of deciding something officially." *Determination*, <u>Black's Law Dictionary</u> (10th ed. 2014); <u>see also</u> *Legally Determined*, <u>Black's Law Dictionary</u> (10th ed. 2014) (defining "legally determined" as "decided by legal process"); <u>Charter Sch. USA, Inc. v. John Doe No. 93</u>, 152 So. 3d 657, 661 (Fla. 3d DCA 2014) (concluding, in the context of analyzing Florida Rule of Civil Procedure 1.550, that "'determined' means the point in time when the trial judge, in this case signed an order ruling on the school's post-trial motions"). Indeed, if the word "determined" somehow signified an express statement, then the phrase "expressly determined" would be redundant. It is therefore clear from the text of rule 9.130(a)(3)(C)(xi) that a party's ability to appeal non-final orders under the rule is not as limited as the majority has found. In fact, it is only possible to reach the majority's conclusion if we add language to the rule.

B. <u>**The majority's interpretation is in conflict with the purpose of the rule**</u>

The purpose behind amending rule 9.130 to include rule 9.130(a)(3)(C)(xi) was to give meaningful effect to sovereign immunity from suit. This purpose would be arbitrarily frustrated if only those orders expressly denying entitlement to sovereign immunity were appealable. The Florida Supreme Court has specifically

12

noted the importance of providing interlocutory review to parties who are entitled to sovereign immunity from suit but were denied that right at the trial court level. See Keck v. Eminisor, 104 So. 3d 359, 360 (Fla. 2012).

In Keck, when addressing whether interlocutory review should be available to defendants to appeal non-final orders denying motions for summary judgment based on a claim of sovereign immunity under section 768.28(9)(a), Florida Statutes (2005), the Florida Supreme Court stated the following:

> [I]f a defendant who is entitled to the immunity granted in section 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant. **If orders denying summary judgment based on claims of individual immunity from being named as a defendant under section 768.28(9)(a) are not subject to interlocutory review, that statutory protection becomes essentially meaningless for the individual defendant.**

Id. at 366 (emphasis added). Thus, the Florida Supreme Court recommended a change to the rules of appellate procedure to allow for appeals "where an individual defendant who claims immunity under 768.28(9)(a) is denied that immunity and the issue turns on a matter of law." Id. at 369. Specifically, the Court requested that the Florida Bar Appellate Court Rules Committee consider "whether the categories of non-final orders in rule 9.130(a)(3) should be expanded to include the denial of any claim of immunity **where the question presented is solely a question of law**." Id. at 370 (emphasis added). Upon recommendations

13

from the Florida Bar Appellate Court Rules Committee, the Florida Supreme Court adopted rule 9.130(a)(3)(C)(xi), which now permits appeals from non-final orders that determine that, as a matter of law, a party is not entitled to sovereign immunity.

In order for a party's entitlement to sovereign immunity **from suit** to constitute an effective protection, the party must have a meaningful ability to assert its entitlement to sovereign immunity at the **very beginning of litigation**. To hold that the non-final order must expressly state that a party is not entitled to sovereign immunity, where it is otherwise clear that the trial court made such a determination, would arbitrarily restrict a party's ability to appeal an adverse ruling regarding its entitlement to sovereign immunity from suit in circumstances where the trial court merely issues an unelaborated order denying a motion to dismiss that only raises the party's claim to sovereign immunity from suit. To withhold an appellate remedy to a party who is sovereignly immune from suit as a matter of law until the case has been fully litigated, simply because the trial court has failed or refused to issue an elaborated order, is contrary to the very purpose and intent of the rule change.

C. **The case law does not support the majority's position**

The majority cites to two opinions issued by this Court in support of its position that this Court lacks jurisdiction over the trial court's unelaborated orders

14

denying Citizens' motions to dismiss: <u>Citizens Property Insurance Corp. v. Sosa</u>, 215 So. 3d 90 (Fla. 3d DCA 2016), and <u>Miami-Dade County v. Pozos</u>, 42 Fla. L. Weekly D418 (Fla. 3d DCA Feb. 5, 2017). Both cases are easily distinguishable. <u>Pozos</u> is not yet final on appeal, and the trial court specifically stated that it was not ruling on sovereign immunity in <u>Sosa</u>. And, as will be discussed below, the Florida Supreme Court has reviewed unelaborated orders denying motions to dismiss where it is clear that the trial court determined, as a matter of law, that a party was not entitled to immunity.

**(1) <u>Sosa</u>**

In <u>Sosa</u>, Citizens moved to strike the bad-faith allegations and to dismiss and/or strike counts II and III based on its sovereign immunity from bad-faith claims. <u>Sosa</u>, 215 So. 3d at 91. However, the record in <u>Sosa</u> reflected that the trial court **did not even reach the issue of sovereign immunity** when it denied Citizens' motion to dismiss. <u>Id.</u> Instead, the trial court abated or stayed any action on those counts until the issues of coverage and liability were resolved. <u>Id.</u> Because the trial court did not rule on Citizens' sovereign immunity claim, the majority's reliance on that case is misplaced.

**(2) <u>Pozos</u>**

<u>Pozos</u>, although not yet final on appeal, is also distinguishable. First, Miami-Dade County raised the issue of its sovereign immunity in a motion for

15

summary judgment rather than in a motion to dismiss. Whereas a motion to dismiss is designed to test the legal sufficiency of the complaint assuming that the alleged facts are true, Minor v. Brunetti, 43 So. 3d 178, 179 (Fla. 3d DCA 2010), a motion for summary judgment usually rests on whether the evidence developed in the record supports only one set of facts that entitles a party to judgment as a matter of law. In Pozos, this Court found that it lacked jurisdiction because the trial court denied the County's motion for summary judgment without specifying whether it determined, as a matter of law, that the County was not entitled to sovereign immunity or whether it found that there were "disputed issues of material fact or ongoing discovery that would render summary judgment premature." Pozos at *5.

Second, two different issues were argued in Pozos: (1) whether the County was entitled to summary judgment based on its claim of sovereign immunity; and/or (2) whether there were material issues of disputed fact as to whether the County owed the plaintiff a duty of care. Because the trial court issued an unelaborated order, the majority found that it was impossible to determine the trial court's reasoning for denying the County's motion for summary judgment.

### D. The Florida Supreme Court

#### (1) Beach Community Bank

The majority's interpretation of rule 9.130(a)(C)(xi) is also in conflict with the Florida Supreme Court's interpretation of the rule. In Beach Community Bank v. City of Freeport, Florida, 150 So. 3d 1111 (Fla. 2014), the Florida Supreme Court accepted jurisdiction to review the First District Court of Appeal's decision in City of Freeport v. Beach Community Bank, 108 So. 3d 684 (Fla. 1st DCA 2013). The City of Freeport moved to dismiss the complaint based on its immunity from suit. The trial court issued an order denying the City's motion to dismiss. A review of the record before the First District and the Florida Supreme Court reflects that the order in question merely stated that the City's "**Motion to Dismiss with Prejudice is denied and Defendant shall file a responsive pleading within 20 days of the date of this Order**." (emphasis added).

The City filed a petition for writ of certiorari to review the non-final order on the basis that the City was entitled to sovereign immunity as a matter of law and thus the trial court departed from the essential requirements of law by denying its motion to dismiss. City of Freeport, 108 So. 3d at 686. The First District agreed with the City, granted the petition and quashed the order under review. Id. at 691. On review to the Florida Supreme Court, the original question was whether the District Court could exercise certiorari jurisdiction to review the trial court's non-final order. Beach Cmty. Bank, 150 So. 3d 1112. However, because the Florida Bar Appellate Court Rules Committee's proposed amendment to rule 9.130 was

17

pending before the Florida Supreme Court and the Court concluded that the "case falls squarely within the new rule amendment," the Court determined "that the City should be entitled to the benefit of the new rule." Id. at 1113. Specifically, the Court held that the proposed amendment "answers the question that the City asks this Court to confront in this case. **This amendment permits district courts to review nonfinal orders of decisions determining entitlement to sovereign immunity where the case involves a pure legal question**." Id. (emphasis added).

Importantly, although the trial court's order simply denied the City's motion to dismiss and ordered the City to file responsive pleadings within twenty days, and the order did not include the language that the denial of the motion to dismiss on the basis of sovereign immunity was a denial as a matter of law, the First District reviewed the order and determined that the City was entitled to sovereign immunity and the Florida Supreme Court reviewed the same order and agreed. Beach Cmty. Bank, 150 So. 3d at 1114. Thus, the Florida Supreme Court quashed the First District's decision to the extent that it resolved the issue based on certiorari review, but approved the decision based on the amendment to rule 9.130, Id. at 1114-15, and issued its opinion on the very same day that it approved the amendment to rule 9.130.

**(2) Keck**

18

The Florida Supreme Court's opinion in <u>Keck</u> also suggests that the majority's interpretation of rule 9.130(a)(3)(C)(xi) is incorrect. In <u>Keck</u>, the trial court issued an order denying Keck's motion for summary judgment based on his claim of sovereign immunity. <u>Keck</u>, 104 So. 3d at 362. Keck sought review, but because rule 9.130 had not yet been amended to permit interlocutory appeals of trial court orders denying summary judgment, Keck petitioned the First District for a writ of certiorari. <u>Id.</u> Because the First District concluded that certiorari review was not proper, it denied the petition without addressing the merits of the petition. <u>Id.</u> The First District, however, certified a question to the Florida Supreme Court; the Florida Supreme Court accepted jurisdiction; and the Court rephrased the certified question as follows:

> Should review of the denial of a motion for summary judgment based on a claim of individual immunity under section 768.28(9)(a), Florida Statutes, await the entry of a final judgment in the trial court to the extent that the order turns on an issue of law?

<u>Id.</u> at 363.

In answering the certified question, the Florida Supreme Court noted that in <u>Tucker v. Resha</u>, 648 So. 2d 1187 (Fla. 1994), the Court had "examined whether to expand the category of non-final appealable orders to include orders denying summary judgment based on a qualified immunity claim," and because of the nature of the rights involved, interlocutory review must be available to an

19

individual whose claim of qualified immunity was denied by the trial court.  Keck,

648 So. 2d at 364.

The Court specifically noted:

> Because qualified immunity of public officials involves *immunity from suit* rather than a mere defense to liability, we reasoned that immunity from suit is effectively lost if a case is erroneously permitted to go to trial because a trial court's order denying qualified immunity cannot be reviewed on appeal from a final judgment as the public official cannot be re-immunized if erroneously required to stand trial or face the other burdens of litigation.

Id. at 364 (emphasis in original) (internal quotations omitted) (citing Tucker, 648

So. 2d at 1189).  The Florida Supreme Court went on to recognize that in Tucker,

> [w]e stressed that if orders denying summary judgment based upon claims of qualified immunity are not subject to interlocutory review, the qualified immunity of public officials is illusory and the very policy that animates the decision to afford such immunity is thwarted. We held that an order denying summary judgment based upon a claim of qualified immunity should be subject to interlocutory review to the extent that the order turns on an issue of law.

Keck, 104 So. 3d at 365 (internal citations and quotations omitted).

> The Florida Supreme Court in Keck, therefore, concluded that:

> [I]f a defendant who is entitled to the immunity granted in section 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant. **If orders denying summary judgment based on claims of individual immunity from being named as a defendant under section 768.28(9)(a) are not subject to interlocutory review, that statutory protection becomes essentially meaningless for the individual defendant**.

20

For the above reasons, we answer the rephrased question in the negative and hold that **an order denying summary judgment based on a claim of individual immunity under section 768.28(9)(a) is subject to interlocutory review where the <u>issue turns on a question of law.</u>**

Keck, 104 So. 3d at 366 (emphasis added).

Based on the Florida Supreme Court's ruling in Keck, Justice Pariente, in her concurring opinion, recommended that the Florida Bar Appellate Court Rules Committee submit a proposed amendment, as previously discussed in this opinion, and that when it addressed the rule amendment, that it do so more broadly to address interlocutory appeals of immunity claims in a comprehensive manner. Id. at 369.

While I recognize that the Florida Supreme Court was addressing individual immunity under section 768.28(9)(a), rather than sovereign immunity granted under section 627.351(6)(s), in Keck, Justice Pariente asked the Florida Bar Appellate Court Rules Committee to address interlocutory appeals of immunity claims in a comprehensive manner, and rule 9.130(a)(3)(C)(xi) was later amended in direct response to Justice Pariente's request. It also makes no sense to treat orders that deny an individual's immunity from suit any differently than orders denying an entity's immunity from suit. In both instances, the defendant who is entitled to immunity from suit as a matter of law should not be forced to litigate the plaintiff's claims simply because the trial court issues an unelaborated order.

21

**E. The majority's reliance on cases involving workers' compensation immunity is misplaced**

In support of its argument that the trial court must expressly state in its non-final order that it is determining, as a matter of law, that a party is not entitled to sovereign immunity, the majority relies on cases addressing workers' compensation immunity under rule 9.130(a)(3)(C)(v), which states that a party may appeal a non-final order determining "that, as a matter of law, a party is not entitled to workers' compensation immunity." The Florida Supreme Court, in construing rule 9.130(a)(3)(C)(v), has stated that "[n]onfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable unless the trial court order **specifically states** that, as a matter of law, such a defense is not available to a party." Hastings v. Demming, 694 So. 2d 718, 720 (Fla. 1997) (emphasis added); Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 821 (Fla. 2004) (stating that "a district court does not have jurisdiction to review a nonfinal order denying summary final judgment unless the trial court's order **explicitly states** that the defendant will not be entitled to present a workers' compensation immunity defense at trial") (emphasis added).

This case law is highly distinguishable, as is rule 9.130(a)(3)(C)(v). Unlike Citizens' claim for entitlement to sovereign immunity from suit in the instant cases, **workers' compensation immunity is an affirmative defense**, involving factual issues that typically preclude a motion to dismiss. Gen. Cinema Beverages

22

of Miami, Inc. v. Mortimer, 689 So. 2d 276, 277 (Fla. 3d DCA 1995) ("Establishment of workers' compensation immunity usually requires the employer to bring forth facts from outside the four corners of the complaint, which necessarily requires a motion for summary judgment."); Eiler v. Camp Dresser & McKee, Inc., 542 So. 2d 441, 442 (Fla. 5th DCA 1989) (stating that "the exclusivity provision set forth in section 440.11 of the Workers' Compensation Act is an affirmative defense which cannot be raised by a motion to dismiss unless the allegations of a prior pleading in the case demonstrate the existence of such a defense"); see also Ruiz v. Aerorep Grp. Corp., 941 So. 2d 505, 508 (Fla. 3d DCA 2006) ("Although workers' compensation immunity usually cannot be raised in a motion to dismiss, an exception exists allowing the defense to be raised in a motion to dismiss where the defense appears on the face of the complaint.").

Thus, in the context of an order denying, without explanation, a motion that is premised on the affirmative defense of workers' compensation immunity, it may be difficult to determine whether the trial court denied a party's claim for workers' compensation immunity due to factual issues that must be resolved prior to adjudicating the legal issue of immunity, or whether the trial court determined, as a matter of law, that a party is not entitled to the workers' compensation immunity defense. By contrast, in the instant cases, whether Citizens is entitled to sovereign immunity from suit with regard to statutory bad-faith claims **involves no factual**

23

**issues**, and the legal question can readily be resolved by a motion to dismiss as soon as the complaint is filed. That is because Citizens is immune from having to defend itself against all first-party bad-faith claims regardless of the facts alleged.

Additionally, even in the workers' compensation immunity context, at least one of our sister courts has raised a significant concern about parties and trial courts intentionally obfuscating the real justifications for orders denying a party's claim for workers' compensation immunity. In <u>Martin Electronics, Inc. v. Glombowski</u>, 705 So. 2d 26 (Fla. 1st DCA 1997) (en banc), the First District Court of Appeal held that it lacked appellate jurisdiction to review a non-final order denying a motion to dismiss. <u>Id.</u> at 27. The trial court below determined that there were insufficient **facts** to decide the issue of workers' compensation immunity, but specifically noted that "[t]his determination does not mean that this Court may not ultimately be presented with sufficient facts to determine this issue as a matter of law." <u>Id.</u> at 28. On appeal, the majority held, in applying the Florida Supreme Court's decision in <u>Hastings</u>, that a non-final order denying a motion to dismiss based on workers' compensation immunity must expressly determine, as a matter of law, that workers' compensation immunity is unavailable. <u>Id.</u> at 29-30. However, Judge Wolf, specially concurring, raised a significant concern regarding appeals from orders denying motions to dismiss, as opposed to orders denying

24

motions for summary judgment, which deny a party's claim for workers' compensation immunity, and stated as follows:

> In these cases, there can be no disputed facts. The decision concerning the motion must assume that all the facts in the complaint are taken as true and all inferences are drawn in favor of the plaintiff. Thus, the denial of the motion cannot be based on disputed facts, but must constitute a legal ruling on a given set of facts.

Id. at 31-32 (citation omitted).

Judge Wolf's reasoning is even more persuasive in the context of Citizens' sovereign immunity. The Appellees do not contest that Citizens is entitled to sovereign immunity as a matter of law as to all statutory bad-faith claims. Thus, the only issue before the trial courts was whether the complaints contained bad-faith allegations from which Citizens was immune. Unlike a motion for summary judgment, this legal determination cannot be based upon disputed facts at the pleading stage on a motion to dismiss. Further, as Judge Wolf aptly notes:

> As a practical matter, orders denying motions to dismiss or motions for summary judgments will often be drafted by a plaintiff's attorney or by a trial judge who may be gun-shy of an appeal. We can expect that such orders will simply deny the motion without explanation or be drafted to be ambiguous. **Thus, many parties entitled to immunity may be forced to go to trial.**

Id. at 31 (Wolf, J., specially concurring) (emphasis added). This last sentence rings especially true in the instant cases. If Citizens is denied appellate review of the orders at issue in these appeals, it will be forced to litigate a plethora of claims,

25

although, as will be shown *infra*, it is in fact sovereignly immune from each of them.

As reflected in this discussion, workers' compensation immunity substantially differs from sovereign immunity from suit as invoked by Citizens in the instant appeals. Citizens' claim for sovereign immunity from suit turns on the allegations in the complaints, rather than on an affirmative defense that requires proof of specific facts. Any analogy between rule 9.130(a)(3)(C)(xi) and rule 9.130(a)(3)(C)(v) is accordingly unpersuasive.

**F. <u>The majority's interpretation of the rule will lead to an absurd result</u>**

Common sense and logic militate against the majority's interpretation of the rule. "[T]he rules of construction applicable to statutes also apply to the construction of rules." <u>Brown</u>, 715 So. 2d at 243. Thus, "the Court should not interpret a [rule] in a manner resulting in unreasonable, harsh, or absurd consequences." <u>Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC</u>, 986 So. 2d 1260, 1270 (Fla. 2008). If a party raises only one argument in a motion to dismiss a complaint, an argument that requires the trial court to make a **legal determination** based on the allegations in the complaint, as opposed to developed or undeveloped factual matters, and the trial court denies the motion to dismiss, then the trial court has necessarily made a legal determination as to the legal argument raised in the motion.  If that legal argument was a party's claim that it is

entitled to sovereign immunity from defending itself from the allegations in the complaint, then the trial court, by denying the motion, has determined, as a matter of law, that the party is not entitled to sovereign immunity based on the allegations in the complaint.

In the instant cases, it is the allegations themselves that form the foundation for Citizens' motions to dismiss. It is irrelevant how the facts and evidence might develop during litigation. Citizens has only argued that it is sovereignly immune, as a matter of law, from defending against the Appellees' allegations of bad-faith. Thus, by denying the motions to dismiss, the trial courts have necessarily determined, as a matter of law, that Citizens is not sovereignly immune from such allegations. These legal determinations are reviewable under rule 9.130(a)(3)(C)(xi).

## G. <u>Conclusion as to the issue of jurisdiction</u>

In conclusion, rule 9.130(a)(3)(C)(xi) does not limit appeals to non-final orders that **expressly** state that the trial court has determined, as a matter of law, that a party is not entitled to sovereign immunity because: (1) the plain meaning of the text of rule 9.130(a)(3)(C)(xi) does not specify that such orders contain any express language; (2) the purpose of the amendment of rule 9.130 to include subsection 9.130(a)(3)(C)(xi) was to avoid vitiating the protections of sovereign immunity from suit by allowing appeals from non-final orders denying a party's

27

claim that it is entitled to such immunity; (3) the case law does not support the majority's interpretation of the rule; (4) rule 9.130(a)(3)(C)(v), in the fact-heavy workers' compensation immunity context, cannot be analogized to rule 9.130(a)(3)(C)(xi), which covers the subject of entitlement to sovereign immunity; and (5) to conclude otherwise would lead to an absurd construction of rule 9.130(a)(3)(C)(xi), as it would arbitrarily force a party to litigate and defend against a claim from which it has sovereign immunity from suit.[7] As the Florida Supreme Court has stated, a non-final order will be appealable pursuant to rule 9.130(a)(3)(C)(xi) if it is clear that the order determines "entitlement to sovereign immunity **where the case involves a pure legal question**." Beach Cmty. Bank, 150 So. 3d at 1113 (emphasis added).

Accordingly, I respectfully disagree with the majority's conclusion that we lack jurisdiction to review the unelaborated non-final orders denying Citizens' motions to dismiss in the instant cases where it is clear that the trial courts rejected,

---

[7] Again, none of this is to say that an order denying a party's claim for sovereign immunity is appealable *per se*. In some circumstances, if it is possible that there are factual issues in dispute concerning the existence of sovereign immunity, then rule 9.130(a)(3)(C)(xi) does not allow an appeal from a non-final order that does not elaborate the basis for the trial court's ruling in denying the motion to dismiss. See Pozos, 42 Fla. L. Weekly D418 at *5. Similarly, if it is clear that the trial court did not address the issue of sovereign immunity, such as where the trial court abates its decision as to sovereign immunity, then rule 9.130(a)(3)(C)(xi) does not permit appellate review. Sosa, 215 So. 3d at 91. However, neither of those circumstances are present here.

as a matter of law, Citizens' claims that it is entitled to sovereign immunity from the bad-faith allegations in the complaints.

## II. <u>Immunity</u>

Although the majority has concluded that we lack jurisdiction to review the orders on appeal, I have chosen to address the merits in my dissent in order to demonstrate why we should not treat unelaborated orders as non-reviewable orders. If we are precluded from reviewing the five non-final orders in these consolidated interlocutory appeals, Citizens, which is entitled to sovereign immunity from defending itself against first-party bad-faith claims, will be forced to litigate the plaintiffs' claims until final judgments are rendered solely because the trial courts issued unelaborated orders. Thus, Citizens is being denied the very protection it was granted by statute. Citizens moved to dismiss two counts in each of the Appellees' complaints, which are styled as breach of contract and declaratory judgment claims, but which rely on first-party bad-faith allegations **as the basis** for relief, and Citizens is sovereignly immune from such first-party bad-faith claims. Because the Appellees' breach of contract and declaratory judgment counts actually allege first- party bad-faith regarding Citizens' claims handling process, the trial courts erred by denying Citizens' motions to dismiss these claims. These orders, if reviewable on appeal, would therefore necessarily require reversal on appeal.

## A. Citizens' immunity from first-party bad-faith causes of action

By way of necessary background, I note that first-party bad-faith causes of action did not exist in the common law, but were created by section 624.155 of the Florida Statutes. See Citizens Prop. Ins. Corp. v. Perdido Sun Condo. Ass'n, 164 So. 3d 663, 667 (Fla. 2015). Section 624.155(1)(a)1. provides:

> (1) Any person may bring a civil action against an insurer when such person is damaged:
>
> (a) By a violation of any of the following provisions by the insurer:
>
> 1. Section 626.9541(1)(i), (o), or (x)[.]

Section 626.9541(1)(i), Florida Statutes, in turn, includes a list of unfair claim settlement practices that may, if properly pled, form the basis of a first-party bad-faith cause of action. For example, allegations that the insurer "fail[ed] to adopt and implement standards for the proper investigation of claims" and "den[ied] claims without conducting reasonable investigations based upon available information," are elements in support of a party's claim that the insurer acted in bad-faith.[8] §§ 626.9541(1)(i)(3)(a, d).

However, Citizens is entitled to sovereign immunity from these first-party bad-faith allegations. See § 627.351(6)(s)1., Fla. Stat. ("**There shall be no liability on the part of, and no cause of action of any nature shall arise against, any**

---

[8] There are other requirements and elements that must be met in order to prevail on a first-party bad-faith cause of action, but because they are not relevant to these appeals, I decline to discuss them here.

**assessable insurer or its agents or employees . . . for any action taken by them in the performance of their duties or responsibilities under this subsection**.") (emphasis added); Perdido Sun Condo. Ass'n, 164 So. 3d at 668 (holding that the Legislature's waiver of Citizens' sovereign immunity from suit did not include first- party bad-faith claims brought pursuant to section 624.155(1)). To reiterate, such immunity is an immunity from suit, which means that the cause of action may not be brought against Citizens at all and that Citizens is immune from having to defend itself against such claims. Citizens Prop. Ins. Corp. v. Garfinkel, 25 So. 3d 62, 64 (Fla. 5th DCA 2009) ("The Legislature . . . endowed Citizens with immunity **against all liability and suit** apart from five specific exceptions[.]") (emphasis added), approved of by Perdido Sun Condo. Ass'n, 164 So. 3d at 667, disapproved of on other grounds by Citizens Prop. Ins. Corp. v. San Perdido Ass'n, 104 So. 3d 344 (Fla. 2012).

Thus, in the instant cases, the specific issue before this Court on the merits would be whether the counts identified by Citizens in the Appellees' complaints depend upon bad-faith allegations and are, therefore, claims from which Citizens is sovereignly immune. If such counts, as pled, are bad-faith claims, then they must be dismissed.

Citizens contends that the breach of contract and declaratory judgment counts in each of the Appellees' complaints are riddled with bad-faith allegations

31

concerning the "proper" handling of the insurance adjustment process. I agree. In fact, the "Breach of Contract" counts are not only riddled with bad-faith allegations, they are actually **premised** on bad-faith allegations. Each of the claims at issue are premised on the claim that Citizens failed to "properly investigate or adjust" the Appellees' insurance claims. The "Declaratory Judgment" counts are **premised** on the Appellees' allegations that Citizens "failed to satisfy its duty to adjust" and failed to "properly investigate" the claims. All of the Appellees' breach of contract and declaratory judgment claims contain variations of these allegations.

These bad-faith allegations are completely irrelevant to any viable breach of contract or declaratory judgment claim against Citizens, but are instead first-party bad-faith claims regarding Citizens' handling of the insurance adjustment process, claims from which Citizens is sovereignly immune. Perdido Sun Condo. Ass'n, 164 So. 3d at 666-67 ("Although the Legislature codified Citizens' duty to handle claims in good faith, *see* § 627.351(6)(s) 2., Fla. Stat., the Legislature never listed statutory first-party bad faith claims as one of the exceptions to Citizens' immunity.").

The notion that these are not statutory bad-faith claims simply because they contain a fleeting reference to a breach of contract or because they are not called statutory bad-faith claims should be rejected. While there are few Florida cases on

point, federal courts applying Florida law have addressed similar attempts to disguise a statutory bad-faith claim as a breach of contract claim. These courts concluded that absent a cause of action under section 624.155, there can be no liability stemming from allegations concerning an insurer's lack of good faith in the performance of its contractual obligations. See Portofino S. Condo. Ass'n of W. Palm Beach, Inc. v. QBE Ins. Corp., 664 F. Supp. 2d 1265, 1268 (S.D. Fla. 2009) ("Portofino's allegations that QBE failed to 'reasonably' and 'promptly' investigate and pay its claim are analogous to the term 'wrongful' which would imply a statutory bad faith claim under § 624.115.") (internal quotation marks omitted); Nirvana Condo. Ass'n v. QBE Ins. Corp., 589 F. Supp. 2d 1336, 1340 (S.D. Fla. 2008) ("Nirvana's claim is based on an implied contractual obligation based upon its reasonable contractual expectations. Nevertheless, **because the factual allegations underlying its claim are based upon QBE's failure to fairly and promptly perform under its obligations in the contract, that contractual claim can only be asserted, if at all, together with the extra-contractual bad faith claim under section 624.155.**") (emphasis added); Quadomain Condo. Ass'n v. QBE Ins. Corp., No. 07-60003-CIV-MORENO, 2007 WL 1424596, at *4 (S.D. Fla. May 14, 2007) ("Quadomain's claim [for breach of implied warranty of good faith and fair dealing] is actually a claim for statutory bad faith, controlled by section 624.155 of the Florida Statutes, which cannot proceed until the underlying

coverage dispute has been resolved."). These federal cases are persuasive. The Appellees' allegations of bad-faith cannot survive outside of a cause of action under 624.155, and, as I previously discussed, Citizens is sovereignly immune from statutory bad-faith causes of action under section 624.155.

To better illustrate what the Appellees are actually alleging as the basis for their breach of contract and a declaratory judgment claims, the language utilized by one of Appellees is being provided in this opinion. For example, in lower tribunal case number 14-32096, which is appellate case number 3D16-854, count 5 of the amended complaint is a claim for a declaratory judgment. In this count, the plaintiff states the following:

> 76 Plaintiff seeks a declaration from this court that the duty to adjust and investigate a loss, which is contained in the loss payment condition of the policy, is a condition precedent to any other duty or applicable condition or claim of performance by Defendant under this insurance contract, and that as a condition precedent, Defendant must allege and prove satisfaction of all conditions precedent before affirmatively asserting compliance with any other provision or condition in the contract.

The paragraphs that follow identify the contract at issue, the alleged loss, and the denial of the claim. The remainder of the paragraphs allege that Citizens ignored its duty in the contract to properly investigate and adjust the claim, that the duty to adjust contemplates a duty to properly investigate, and that Citizens' compliance with this duty is a condition precedent to which Citizens must present proof of satisfaction.

34

88  Plaintiff submits that where there is no agreement as to a denial or application of an exclusion, Defendant cannot claim compliance with the loss payment condition to 'adjust' the claim without first alleging and proving compliance with its duties to conduct a proper investigation imposed by law.

89  Logically, Plaintiff states that the loss payment condition/duty to adjust the loss must occur before any determination of coverage and is thus a condition precedent to any claim of performance.
. . . .

91  Plaintiff's rights to a fair adjustment of the claim by law and under this insurance policy is dependent upon the facts and the law of contractual construction applicable to the facts . . . .

92  The parties have adverse interests.  The issue of Defendant's legally imposed duty to investigate losses and the devastating results that a failure to fulfill such a duty has on insureds, represents an actual, present, adverse and antagonist interest in the subject matter, in both fact and law.

As these allegations make clear, the plaintiff is seeking a declaration from the trial court that Citizens must allege and prove, as a condition precedent, that it "fairly and properly" investigated and adjusted the plaintiff's claims.  But if there was any doubt as to what the plaintiff is seeking, one need look no further than the WHEREFORE clauses, which state the following:

93.01 that the loss payment condition containing the duty to adjust and fully investigate the loss is a condition precedent to a determination of coverage.

93.02 that Defendant must allege and prove satisfaction of the loss payment condition duty to adjust the loss as a condition precedent prior to determining coverage [regardless of whether coverage is ultimately acknowledged or denied].

35

93.03 Defendant cannot *ipse dixit* claim that whatever coverage decision it makes is a proper adjustment as that term is construed by law absent allegations and proof of satisfaction of all conditions precedent to such a loss, and

93.04 That Plaintiff be awarded its attorney's fees and costs for seeking this declaration of rights.

(bracketed material in original).

Allegations of this form appear in all of the cases on appeal. It is therefore clear that the Appellees cannot recover what they seek in their declaratory judgment claims because whether Citizens "fairly" or "properly" investigated or adjusted the Appellees' insurance claims are issues that are only relevant in bad-faith litigation, and Citizens is sovereignly immune from such litigation. See §§ 624.155(1)(a)1., 626.9541(1)(i)(3)(a, d); Perdido Sun Condo. Ass'n, 164 So. 3d at 666-67.

In fact, what the Appellees seek in their declaratory judgment claims is to shift the burden, forcing Citizens to first prove, as a condition precedent, that it properly investigated and adjusted the Appellees' claims before the issue of coverage can arise. Thus, the Appellees seek a declaration from the trial courts that Citizens must actually prove the absence of bad-faith as a condition precedent before the Appellees are required to prove that a breach of contract even occurred.

36

The breach of contract claims are brought under the same bad-faith rubric—the failure to properly investigate and adjust the claim. The issue, however, cannot be whether Citizens properly investigated or adjusted the claim, as Citizens possesses sovereign immunity from such issues. The issue in an insurance breach of contract claim is whether the Appellees suffered a covered loss, and if so, whether Citizens fully compensated them for the loss under the contract.

The five complaints at issue in these appeals contain nearly identical language except for the address of the property, the date of the alleged loss, and the date the claim was filed. The breach of contract claims are **not** premised on the failure to pay for the losses, but rather on the failure to **properly adjust the claims by failing to properly investigate the claims**. As will become readily obvious by carefully reviewing the below example, if the bad-faith allegations are removed, each of the breach of contract claims would fail to state a cause of action.

The breach of contract claim in appellate case number 3D16-1457 states in its entirety as follows.

51 Plaintiff re-alleges and re-avers the allegations common to all counts above as though restated fully herein.

52 Plaintiff and Defendant entered into a contract which provided insurance over the Plaintiff's property per exhibit A.

53 Plaintiff incurred the October 26, 2015 claim during the term of the policy and suffered damages as stated above for said loss.

54    Defendant **failed to properly adjust the claim by failing to properly investigate the same pursuant to the loss payment condition of the contract and the law** [F.S. § 626.877, F.S. §626.878 & Fla. Admin. Code §69B-220.201] **thus breaching the loss payment condition of the policy** which is a material breach of the contract, directly resulting in damages to the Plaintiff. Moreover, the breach of the loss payment condition triggered a violation of other contractual conditions and also a violation by Defendant to properly adjust the claim within 90 days of the casualty, resulting in damages in the amount in controversy alleged above to Plaintiff.

(emphasis added) (bracketed material in original).

WHEREFORE, Plaintiff demands judgment for damages in the above amounts or as the proofs may show against Defendant, together with Attorney's fees and costs, pursuant to Statute, and such other relief as this Court deems meet and proper or equitable.

Respectfully, this is not a case where the two counts in each complaint that are at issue here merely contain "extraneous allegations condemning Citizens' adjustment practices." These counts in each of the subject complaints are **premised on** the alleged inadequacy of Citizens' adjustment practices, and they form the very foundation of the breach of contract and declaratory judgment claims. They, therefore, cannot stand as a matter of law.

If the bad-faith allegations or "extraneous language" were removed from paragraph 54 of the complaint, the breach of contract claim would fail to state a cause of action because the only breach alleged is the failure to properly adjust the claim by failing to properly investigate the claim.

38

Nevertheless, if any of the Appellees wish to amend their complaint to state a cause of action for breach of contract on grounds they are legally permitted to pursue, they certainly may do so. Citizens announced at oral argument that it does not object to defending itself against such claims. What the Appellees cannot do, however, is pursue claims premised on Citizens' adjustment practices.

Additionally, even if these statutory bad-faith allegations were not barred by Citizens' sovereign immunity, then it would still be error to permit the Appellees to litigate such bad-faith claims while they are litigating breach of contract claims. It is well settled that a breach of contract claim and a first-party bad-faith claim may not be tried together. Vest v. Travelers Ins. Co., 753 So. 2d 1270, 1276 (Fla. 2000) ("We continue to hold . . . that bringing a cause of action in court for violation of section 624.155(1)(b)1 is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract. . . . Such a claim should be dismissed as premature."); GEICO Gen. Ins. Co. v. Harvey, 109 So. 3d 236, 239 (Fla. 4th DCA 2013); Maryland Cas. Co. v. Alicia Diagnostic, Inc., 961 So. 2d 1091, 1092 (Fla. 5th DCA 2007) (stating that "an insurer would be prejudiced by having to litigate either a bad faith claim or an unfair settlement practices claim in tandem with a coverage claim, because the evidence used to prove either bad faith or unfair settlement practices could jaundice the jury's view on the coverage issue"); see also Progressive Select Ins. Co. v. Shockley, 951 So.

39

2d 20, 21 (Fla. 4th DCA 2007) ("[The insurer] will suffer irreparable harm, which includes discovery of its accident file, if it is forced to defend against both the [uninsured motorist] claim and the bad faith claim simultaneously."). It would no doubt prejudice an insurer to litigate a breach of contract action at the same time that it is defending against an insured's first-party bad-faith allegations.

B. **Conclusion on Citizens' immunity**

In summary, the Appellees have alleged that Citizens has failed to adjust their insurance claims by failing to properly investigate their claims. This bad-faith language is not merely extraneous language, which could simply be stricken. The Appellees' breach of contract and declaratory judgment claims are actually premised on these statutory bad-faith allegations and if the bad-faith allegations are removed, these claims would fail to state a cause of action. If the Appellees are dissatisfied with Citizens' coverage determination or the amount Citizens is willing to pay to cover the loss, they can file a breach of contract claim disputing those determinations—not disputing whether Citizens acted in good faith when it arrived at those determinations or the means by which they processed the claims.

Because the allegations contained in the breach of contract and declaratory judgment counts in the complaints are actually allegations concerning statutory bad-faith, from which Citizens is sovereignly immune, the trial court erred by denying Citizens' motions to dismiss as to those counts. Accordingly, we should

exercise jurisdiction under rule 9.130(a)(3)(c)(xi), reverse the trial courts' orders on appeal, and remand with instructions to dismiss the relevant counts in the Appellees' complaints without prejudice.

## III. <u>Recommendations</u>

### A. <u>Recommendation to the trial courts</u>

Immunity from suit is a valuable protection. If a defendant who is entitled to immunity from suit is erroneously required to litigate the case and to stand trial, that individual or entity has lost the right bestowed by statute to be protected from even being named as a defendant, thereby rendering the statutory protection meaningless. <u>Keck</u>, 104 So. 3d at 366. This problem can be easily remedied if the trial courts simply issue orders that clarify the trial court's ruling on a motion to dismiss or a motion for summary judgment where the issue of immunity is raised and litigated. The order should state whether the motion for dismissal or for summary judgment on the claim of immunity is being denied as a matter of law, and, if not, why not. Appellate review should not be thwarted by the issuance of an unelaborated order.

### B. <u>Certified Question and Recommendation to the Florida Supreme Court</u>

This issue has resulted in numerous appeals in this Court and the other appellate courts. Because immunity from suit provides an important and valuable

protection, I recommend that the Florida Supreme Court accept and address the following certified question:

> Under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(xi), must a trial court's order expressly state that it has determined, as a matter of law, that the defendant is not entitled to sovereign immunity in order for the district courts of appeal to have jurisdiction to review the non-final order, or do the district courts of appeal have jurisdiction to review the non-final order if the issue of immunity turns on a pure question of law?

I also recommend that the Florida Supreme Court request that the Florida Bar Appellate Court Rules Committee submit a proposed amendment to rule 9.130(a)(3)(C)(xi) requiring trial courts to articulate the basis of their ruling on immunity determinations.